DULY *et al.*, Plaintiffs in Error, v. BROOKS, Defendant in Error.

1. By the third section of the territorial act of February 1, 1817, (1 Terr. Laws, p. 543, a justice of the peace of Missouri territory was authorized to take acknowledgment of deeds where the lands conveyed lay outside the county of which he was justice. (NAPTON, Judge, *dissenting.*)

### *Error to Carroll Circuit Court.*

This was an action to recover possession of a tract of land containing three hundred and twenty acres, situated in Carroll county. The plaintiffs claim title under one Samuel Duly. The defendant put in issue the alleged right of possession of plaintiffs and set up the statute of limitations. At the trial the plaintiffs adduced in evidence an exemplification

of the record of a patent granted by the United States, dated January 4, 1819, conveying the land in controversy to one William Hines. The land patented was military bounty land, granted in consideration of services in the war of 1812. The plaintiffs then offered in evidence, after making the proper preliminary proof, a certified copy of the record of a deed purporting to have been executed by the said William Hines, conveying the said land so granted to said Hines to Samuel Duly. This deed was dated December 11, 1820. From the certificate of acknowledgment, as certified, it appeared to have been acknowledged on the day of its date before a justice of the peace of the county of Montgomery, and territory of Missouri. No other evidence of the execution of said deed was offered independent of this certified copy of the record, including the copy of the acknowledgment before said justice. The court excluded said certified copy of the record on the ground that the deed was acknowledged before a justice of the peace of Montgomery county. The plaintiffs took a nonsuit, with leave, &c.

*Troxell*, for plaintiffs in error.

I. The justice had the authority to take the acknowledgment in question. (1 Terr. Laws, p. 543, § 3.) Their copy was therefore admissible. The land was military bounty land, and on that ground the copy was admissible. (R. C. 1855, p. 366, § 51–55.) It was in fact recorded more than ten years before the time of offering the copy in evidence. It was admissible on that ground. (R. C. 1855, p. 733, § 58.) The record shows substantially that plaintiffs and their ancestor had claimed and enjoyed the premises through the deed in question for more than ten consecutive years, and that deed was recorded at least ten years preceding the offer of it in evidence.

*Gardenhire*, for defendant in error.

I. The deed was properly excluded. A justice of the peace could not, under the third section of the territorial act of February 1, 1817, take acknowledgment of a deed con-

veying land not situated in his county. (1 Terr. Laws, p. 543, 422–3, 179.) In 1813 counties were established and the jurisdiction of justices of the peace confined to them. The act of 1815 gave clerks of the circuit courts the right to take acknowledgments in the same manner as judges of the superior or circuit courts, "or any justice of the peace of the county where the land lies." (1 Terr. Laws, p. 422.) After the abolition of districts and the establishment of counties, there was no express law authorizing justices of the peace to take acknowledgments anywhere until the act of February 1, 1817. The object of the third section of the act of 1817 was to establish the authority directly. Montgomery county was established in 1818. (Id. p. 580.) No justice of the peace in it had jurisdiction beyond it.

Scott, Judge, delivered the opinion of the court.

The question in this case is whether a justice of the peace, under the third section of the territorial act of February 1, 1817, could take the acknowledgment of a deed conveying land not situated in the county in which he acted as a justice. By the territorial act of October 1, 1804, deeds were required to be acknowledged before one of the judges of the general court, or before one of the justices of the court of common pleas of the district where the land conveyed lies. So at that time justices of the peace could not take the proof and acknowledgment of deeds. By the act of July 7, 1807, (sec. 3,) it was made lawful for any judge of the court of common pleas within the territory, or for any justice of the peace of the district where the land lies, to take the proof or acknowledgment of deeds. It will be observed that this act enabled judges of the court of common pleas to take the acknowledgment of deeds for land wherever situated, and for the first time enabled justices to take acknowledgments, but limited their authority to the district where the land lies. Afterwards it was enacted by the third section of the act of February 1, 1817, that all deeds, conveyances, bonds and obligations for the conveyance of lands lying and being sit-

uated in this territory, and the right of dower thereto and therein, may be proven and acknowledged before any justice of the peace in this territory, in the same manner and under the same restrictions as are now provided by law. As this is the section under which the question arises, the attention is called to its resemblance to the third section of the act of July 7, 1807, by which the limitation on the power of judges of the court of common pleas to take the acknowledgment of deeds was removed and made co-extensive with the limits of the territory.

We must, from courtesy, presume that the territorial assembly had some object in view in introducing an entire section into a statute. It could not have intended that, after its solemn enactment, the law should remain precisely as it was before, especially as it had been and then was in as plain terms as it could be expressed, and no doubt could have possibly been entertained as to its meaning. We should not make the legislature guilty of the folly of taking up a law as plain in its terms as it could be written, and which could not be misunderstood, and, without designing the slightest alteration in its sense, to reënact it in language, which can not be interpreted alike by all, and which gives rise to strife and litigation. The reënactment of the law in relation to justices of the peace taking the acknowledgment and proof of deeds, with the omission to reënact it as to all other officers performing the same duty, when we consider their authority was already co-extensive with the territory, can only be attributed to the fact that the intent of the law was to put all officers on the same footing so far as the taking of the acknowledgment of deeds was concerned. The words of the statute are "all deeds, &c., for the conveyance of lands, &c., lying and being situated in this territory, may be proved and acknowledged before any justice of the peace in this territory in the same manner and under the same restrictions as are now provided by law." So that any justice in the territory may take the acknowledgment of any deed. After the law had selected the agent and prescribed the ex-

tent of his authority, all that remained to be done was to direct the mode of executing the power conferred, and that was all that was done. It would have been an unheard of course, after strictly designating the officer and the extent of his power, afterwards to curtail that authority by the use of a vague word which may have its full effect without being made to influence the preceding words of the sentence. The rule, *noscitur a sociis*, applies here, and the word " restrictions" is to be explained by those in connection with it. The word " manner" points out the object of its introduction, and shows it was only intended to be understood as applying to the restraints and formalities then imposed by law on all officers in taking the acknowledgment of deeds.

Attention has already been solicited to the resemblance between the language of the act of February 7, 1807, which removed the restraint on the power of judges of the court of common pleas in taking the acknowledgment of deeds, and that of the words of the third section of the act of 1817, which, it is maintained, was designed to have the same effect on justices of the peace. When the power of the judges of the court of common pleas was to be restrained in taking the acknowledgment of deeds, the judges were limited to " the district where the land lies." The power of justices in relation to the matter was limited by the same language. When it was intended to remove the restraint on the judges, these words were dropped. What else can be inferred from their omission in the reënactment of the law in relation to the power of justices in taking acknowledgments, but the design of removing the same restraint on them. The phrase " in the district where the land lies" had become familiar from its long and frequent use, and was a clear and distinct way of expressing the limitation on the power of officers in taking the acknowledgment of deeds, and it would be remarkable that the legislature should omit those words, and leave the restraint on the authority of justices to be inferred from the equivocal word " restrictions."

Geyer's digest was published in 1818. The law now un-

der consideration was passed during the year 1817, and was published in that digest. At the period of the publication of the digest, the design and object of the law of 1817 must have been well known. In the digest, under the title " conveyances," p. 128, is found the original law with its limitation, conferring on justices the power to take the acknowledgment of deeds. To the words expressing the limitation there is a mark appended referring to the foot of the page, where there is a reference made to the section whose construction is involved in this controversy. If we will only look at the plan of that work, we will come to the conclusion that, in the opinion of its author, the limitation on the authority of justices in taking acknowledgments was removed by the act of 1817. Independently of the intrinsic weight of the author's opinion, the circumstance, that this construction was a cotemporaneous one, is on principle entitled to its full weight. Had the reference in the digest to the ninth section, as there published, which is the third section of the act of 1817, been only intended as one to a section on the same subject, the mark by which the reference was made would have been appended to the entire section and not to the particular words limiting the power of justices of the peace.

Judge Ewing concurring, reversed and remanded. Judge Napton dissents.